# FOLLANSBEE *v.* FOLLANSBEE.

WILLS; PER CAPITA AND PER STIRPES DISTRIBUTION.

Where a testator directed the sale of his real estate after the termination of a life estate, and the distribution of the proceeds among his "heirs at law" as follows : "to the children of my brothers, J. M. F. and J. V. F., and to the children of my late brother, G. F., in equal proportions, share and share alike ;" and in other items of his will provided that the surplus rents and profits which might accumulate during the life tenancy should be divided "among the said children," with the proceeds of the sale of the real estate; that his personal property should go to his "nephews and nieces," and the residue of his estate " to the children of my said brothers," it was *held* that the proceeds of the sale of the real estate was distributable *per capita* and not *per stirpes.*

No. 460. Submitted October 8, 1895. Decided December 2, 1895.

HEARING on an appeal from a decree overruling exceptions to a report of the auditor and directing the distribution of a fund realized from a sale of real estate. *Affirmed.*

The COURT in its opinion stated the case as follows :

The decision of this case depends upon the construction of a clause of the will of L. T. Follansbee, who died in this District, February 11, 1893.

The testator was a widower, and died childless. He devised his real estate to Frederick R. Wallace, in trust, to hold during the life of Susan E. Tucker, mother of the testator's late wife, and thereafter to convert into money; out of the proceeds of the sale, the trustee, who was also made executor, was directed to pay certain charges, and " then of the remainder of the proceeds of said real estate to divide the same among my heirs at law as follows : to the children of my brothers, James M. Follansbee and Joseph V. Follansbee—and to the children of my late brother, George Fallansbee, in equal proportions, share and share alike. I desire my trustee and so direct to invest all sums accruing as rents or profits on said estate during the life of the said Susan E. Tucker to invest the same in some suitable manner to be divided among the said children with the proceeds of the sale of said real estate."

Other provisions are as follows : " Item 2. All my personal property I give to my said nieces and nephews—subject to this condition, viz : that Susan E. Tucker shall have the right to take such furniture or the personal property as she may elect—and after such election then the balance to be distributed among the children of my said brothers as they may elect. All the rest and residue of my estate I give, devise and bequeath to the children of my said brothers."

Frederick R. Wallace, desiring for good reasons to be relieved of the trust, filed the original bill in this case March 22, 1894, against all the devisees and legatees in the said will and Susan E. Tucker, who was still living, in which he set out the terms of the will and his reasons for retiring from the trust, together with a statement of the condition of the estate. The prayer of the bill was for the appointment of a

successor as trustee and for an account.   W. H. Sholes·and
Frank  T.  Browning were appointed trustees, and the cause
was referred  to the auditor  to state the account and ascer-
tain the amounts to be distributed, etc.

George  Follansbee, who died  before  the will was made,
was the brother of the whole blood of the testator, and the
appellants, Jessie V. and Carrie M. Follansbee, are his chil-
dren.    The brothers, James and Joseph, living at testator's
death, were his brothers of the half blood.    James had five
children and Joseph two, all of whom are parties to the pro-
ceeding, and  the appellees here.

The auditor reported a balance in the hands  of  the trus-
tees, and  in  favor of its distribution  *per  capita* among  the
nephews and nieces aforesaid.    The appellants excepted  to
the report, on the ground that the distribution should be *per
stirpes*, and  have appealed  from a  decree  overruling their
exceptions and adopting the report.

*Mr.  Frank  T.  Browning* and *Mr.  George E.  Hamilton* for
the appellants :

The  rule stated in  Jarman on  Wills, vol. 2, p.  111, that
"where a gift is to the children of several persons, whether
it be to  the children of  A and  B, or to  the children of A
and  the  children  of  B, they take *per  capita* and not *per
stirpes*," seems to have been  disregarded in  all  late Amer-
ican  decisions ; in  some instances severely criticised and
avoided, but by  the  great  weight  of authority altogether
repudiated.    *Balcom* v.  *Haynes*, 96  Mass.  205 ; *Bassett* v.
*Granger*, 100 Mass.  349 ; *Townsend* v.  *Townsend*, 156 Mass.
454 ; *Boal* v.  *Mix*, 17 Wend.  119 ; *Clark* v.  *Lynch*, 46 Barb.
82 ; *Ferrer* v.  *Payne*,  81 N.  Y.  291 ; *Vincent* v.  *Newhouse*,
83 N.  Y.  505 ; *Fissell's Appeal*, 27 Pa. St.  57 ; *Gring's Ap-
peal*, 31 Pa. St.  292 ; *Minter's Appeal*, 40 Pa. St.  115 ; *In re
Ashburn's Estate*,  159 Pa. St.  546 ; *Raymond* v.  *Hillhouse*,
45 Conn.  467 ; *Henry* v.  *Thomas*, 118 Ind.  23 ; *Pall* v.  *Ball*,
31 Tex.  10 ; *Walker* v.  *Griffin*, 11 Wheat.  375 ; Wigram on
Wills  (2d Am. ed.)  324 ; *Haas* v.  *Atkinson*, 20 D.  C.  542.

The words "my heirs at law," as used in this devise, should not be rejected as meaningless. If the testator had meant children *per capita* he would probably have used some simple form of expression. It seems clear that he regarded each one of these classes of children as his heirs, through his respective brothers, and he refers to them as such, but although he had his brothers in mind, technically speaking the children could not be his heirs while his brothers were living.

" It is our duty to give effect to all the words of a will, if, by the rules of law, it can be done. And where words occur in a will, their plain and ordinary sense is to be attached to them, unless the testator manifestly applies them in some other sense." *Wright* v. *Page*, 10 Wheat. 228; see also *Pue* v. *Pue*, 1 Md. Ch. 382 ; *Bassett* v. *Granger*, 100 Mass., p. 349 ; *Crozier* v. *Buy*, 39 Hun, 121 ; *Freeman* v. *Coit*, 96 N. Y. 63.

The share of the appellants in this estate, as heirs at law of the testator, should not be taken from them unless it clearly appears that such was the intention of the testator. *Allen* v. *Allen*, 18 How. 390 ; *Wright* v. *Page*, 10 Wheat. 278 ; 2 Gill, 230 ; 54 N. Y. 83 ; *Low* v. *Harmony*, 72 N. Y. 408.

The courts, with few exceptions, have held that the statute of distributions must be followed and the heir allowed his full share in the estate whenever the meaning of the testator is doubtful. *Kelly* v. *Vigas*, 112 Ill. 244 ; *Henry* v. *Thomas*, 118 Ind. 23 ; *Pall* v. *Ball*, 31 Tex. 10 ; *Rand* v. *Sanger*, 115 Mass. 124 ; *Cummings* v. *Cummings*, 146 Mass. 501 ; *Conklin* v. *Davis*, 63 Conn. 377 ; *Hock's Estate*, 26 Atl. R. 611.

The application of the rule laid down in Jarman on Wills to the devise in this case would result in defeating the intention of the testator, and in bestowing upon the children of the brothers of the half blood a much larger share in the estate than the testator intended them to take. There is no apparent reason for a distribution *per capita*. Every fact

and circumstance in evidence and the natural feelings of the testator, as evidenced by his conduct during his life, point to a different division of his estate. In the construction of ambiguous expressions, the situation of the parties may be very properly taken into view, the ties which connect the testator with his legatees, the affection subsisting between them, the motives which may be reasonably supposed to operate with him, are all entitled to consideration. *Smith* v. *Bell*, 6 Pet. 68.

*Mr. J. J. Darlington* and *Mr. W. H. Sholes* for the appellees.

Mr. Justice SHEPARD delivered the opinion of the Court:

The contention of each side is based upon the meaning of the first clause hereinbefore quoted, aided if it need be by the language of the succeeding clauses. There has also been a very learned and able discussion, in the light of its bearing upon the words of the will, if ambiguity therein be granted, of the rule propounded by Jarman for construction in such cases. He says :

" Where a gift is to the children of several persons, whether it be to the children A and B, or to the children of A and the children of B, they take *per capita* and not *per stirpes*. The same rule applies where a devise or bequest is made to a person and the children of another person ; or to a person described as standing in a certain relation to the testator and the children of another person standing in the same relation, ' as to my son A and the children of my son B ;' in which case A takes a share equal to that of one of the children of B, though it may be conjectured that the testator had a distribution according to the statute in his view. So, if the gift be to A and B and their children, or to a class and their children, every individual coming within the terms of the description, as well children as parents, will take an equal proportion of the fund ; that is, the dis-

tribution will be made *per capita.*"     2 Jarman on Wills (6th ed.) 205.

Concerning this rule, it was said in a case cited on behalf of the appellants : " But this, like some other general rules of construction of wills, has perhaps been adopted and adhered to by the courts rather from the importance of having some rule of interpreting phrases so frequently used by testators than from any strong and preponderating reason in its favor."     *Balcom* v. *Rice,* 96 Mass. 204, 205, per Mr. Justice GRAY.

It is plain, however, that Mr. Jarman did not give the rule any greater weight ; for, immediately following the statement of the rule as given above, he added : " But this mode of construction will yield to a very faint glimpse of a different intention in the context."

In *Balcom* v. *Rice, supra,* the particular clause was a devise " to my brothers A, B and C, and my sisters D and E, and the heirs of F."     The court held against a distribution *per capita,* because it found "a glimpse of a different intention" in the use of the word " heirs," not only in the particular clause, but also in another where it seemed to be used as indicating a distribution *per stirpes.*

In a later case, where the bequest was " to the children of my brother A by his first wife and the survivor of them and to the children of my nephew B and the survivor of them, their heirs and assigns forever," it was held that they took *per capita. Hill* v. *Bowers,* 120 Mass. 135.  The court then said, speaking through the same justice: " The general rule is, that by a bequest to the children of A and to the children of B, the children take *per capita* and not *per stirpes,* in the absence of words indicating a different intention."

As shown in many of the cases cited on the argument, the word *heirs* when used in similar provisions, has often been taken as indicating a distribution or partition *per stirpes,* and so likewise with the word *family.*   On the other hand, a description as " the children of A " has quite generally

been considered as the equivalent of their designation by name instead of as a substitute therefor, and consequently as indicating an intention to distribute *per capita*. *Britton v. Carson*, 46 Md. 186, and cases therein cited, as well as on the briefs of counsel.

However, the words of the testator in this instance are not such as to require us to determine his intention by the application merely of any general rule of interpretation, and the question of the soundness of the Jarman rule and its controlling effect in cases otherwise doubtful, need not necessarily be passed upon.

Looking for the intention of the testator as indicated by the words that he has used, we are of the opinion that the auditor's report rightly expressed it. Granting the effect of the words of division—" among my heirs-at-law "—as contended on behalf of the appellants, in cases of general doubt and uncertainty, we cannot give them controlling weight or even great importance in this instance. These words inaptly describe the children of the two living brothers, and are necessarily controlled by what follows them. The completed sentence is : " Among my heirs-at-law as follows—to the children of my brothers." These last are the effective words. That these children were in the mind of the testator, collectively, as individuals, and not as the representatives of their fathers merely, is made quite clear by the further words, " in equal proportions, share and share alike." The controlling effect of these words cannot be construed away. In the very same clause, also, the testator directs that the surplus revenues and profits that may accumulate during the life of Mrs. Tucker shall be " divided among the *said children* with the proceeds of the sale of said real estate." Again, the intention is shown in the second item, where the personal property is bequeathed " to my nephews and nieces," and in the general residuary devise and bequest " to the children of my said brothers."

Taking the particular clause and considering it separ-

ately, and then in connection with the context, we can come to no other conclusion than that the testator intended the objects of his bounty—"the children of his brothers"—to take *per capita.* It follows that the decree appealed from *must be affirmed, with costs to be paid out of the assets in the hands of the trustees ; and it is so ordered.*